**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ROY PACK,

     Plaintiff - Appellant,

v.

MAUREEN HICKEY; CLOUDPEAK
INITIATIVES, INC.,

     Defendants - Appellees.

No. 18-8035
(D.C. No. 1:15-CV-00185-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Plaintiff Roy Pack appeals the district court's grant of summary judgment and related orders in favor of Defendants Maureen Hickey and Cloud Peak Initiatives, Inc. on Pack's claims under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733. Exercising jurisdiction under 28 U.S.C. § 1291,[1] we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We initially questioned whether we had appellate jurisdiction. Specifically, after dismissing one of Defendants' counterclaims with prejudice and granting summary judgment in favor of Defendants, the district court, following a stipulation by the parties, dismissed Defendants' remaining counterclaims *without prejudice*. As

## I. Background

In 2002, Pack founded Cloud Peak, a private mental health services facility in Sheridan, Wyoming. Pack and Hickey, who were in a romantic relationship, incorporated Cloud Peak in 2005, and for the next eight years, Hickey served as Cloud Peak's President, owner, and sole shareholder and Pack as its CEO. In February 2013, Hickey terminated Pack's employment as well as their romantic relationship and assumed control over property that Pack asserted was either his personal property or joint property. In response, Pack remotely seized control of Cloud Peak's electronic records system, prompting Cloud Peak to seek and obtain an injunction against Pack.

While Pack and Hickey traded volleys in state court, including in a child custody action, Pack contacted Wyoming state regulatory authorities and alleged Hickey and Cloud Peak engaged in Medicaid fraud. After investigating the allegation, the Medicaid Fraud Control Unit of the Wyoming Attorney General's Office elected not to pursue criminal charges but referred the matter to Wyoming Medicaid for possible administration action. Wyoming Medicaid initially penalized

---

such, when Pack filed his notice of appeal following the denial of his motion for reconsideration and the granting of Defendants' motion for attorneys' fees, there was not a final judgment. *See Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998). In response to this court's jurisdictional inquiry, Pack filed a motion in the district court seeking certification of a partial final judgment. *See* Fed. R. App. P. 54(b). The district court granted the motion, and accordingly, we have jurisdiction. *See Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988) ("[I]f the appellant obtains a 54(b) certification after the notice of appeal was filed, we will deem the notice of appeal to ripen as of the date of certification and will accept the jurisdiction[.]").

Cloud Peak $349,893.11 for lack of adequate documentation and failing to respond to records requests. After Cloud Peak produced additional records, Wyoming Medicaid reduced the penalty to $71,705.97, and Cloud Peak paid the penalty.

Thereafter, in October 2015, Pack initiated this FCA *qui tam* action[2] against Defendants. Pack alleged that Hickey was the sole person responsible for reviewing and submitting bills to Medicaid and that she committed Medicaid fraud based upon three types of false billing.

First, Pack alleged Defendants billed a skills group as a therapy group. Specifically, Pack alleged that after David Peterson, a licensed therapist who supervised a therapy group, left Cloud Peak in September 2011, Hickey instructed Cloud Peak staff to continue that same group with Ryan Legler as its leader, even though Legler was not a licensed therapist. Pack alleged this treatment was billed as if Galin McGowan, a licensed therapist and clinical director for Cloud Peak, was supervising the group. Pack alleged Legler drafted the treatment notes and emailed them to McGowan, with McGowan then entering the notes into the electronic records system as though he wrote them. Pack further alleged McGowan never attended the sessions, including those held on Fridays, which all treating staff had off from work.

---

[2] "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007). Under the FCA, either the government may initiate the action itself or, as in this case, a private party, known as a relator, may bring a *qui tam* suit in the government's name. *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1226 (10th Cir. 2017), *cert. denied*, 139 S. Ct. 78 (2018). Relators may receive 25 to 30 percent of a recovery. *See* 31 U.S.C. § 3730(d).

Pack, thus, alleged Legler effectively led a skills group, although Hickey billed it as a therapy group, thereby commanding a higher reimbursement rate.

Next, Pack alleged Defendants improperly billed group therapy sessions as individual therapy sessions. Specifically, Pack alleged that Hickey billed a group session conducted by therapist Roderick Foley as though Foley was conducting individual sessions for each of the group participants, thereby inflating the Medicaid reimbursement amount.

Finally, Pack alleged Defendants improperly billed for direct targeted case management services without documentation of medical necessity, insisting Hickey often would be seen leaving clients' residences at the same time the assigned case manager was arriving to provide those services.

## II. Discussion

On appeal, Pack contends the district court erred by: (1) refusing to grant his discovery request to copy Cloud Peak's electronic records; (2) striking portions of his affidavit; (3) granting summary judgment for Defendants; (4) denying his motion for reconsideration; and (5) awarding attorneys' fees to Defendants.

### A. Discovery Order

First, Pack contends the district court erred by refusing to order Defendants to submit to his discovery request to enter their property and copy Cloud Peak's electronic records, including metadata. Pack sought such records in order to show whether, when, and what changes were made to those records before Defendants submitted them to the state regulatory authorities. In response, Defendants filed a

4

motion for a protective order, contending: (1) an injunction had been entered in state court preventing Pack from entering Defendants' property or obtaining Cloud Peak's data; (2) Pack already had backup copies of Cloud Peak's electronic records, which were created during the time Pack had seized control of Cloud Peak's electronic records system; and (3) Pack already had copies of the records Defendants provided to the state regulatory authorities, thereby allowing for a comparison to the backup copies in his possession.

The matter was heard before a magistrate judge, who concluded she would not render a formal ruling until Pack made a more particularized showing of the need for access to Defendants' electronic records, including a showing regarding the number of actual discrepancies, if any, between the backup copies of the electronic records and the records submitted to the state regulatory authorities. The magistrate judge explained that if Pack made such a showing and the parties were unable to resolve the discovery dispute, then the parties could return and seek a ruling. The magistrate judge, thus, denied Defendants' motion for a protective order without prejudice and declined to order Defendants to permit the requested discovery. Pack now contends, without citation to any case law, that the magistrate judge erred by imposing an undue burden on him.

Because Pack never filed objections with the district court to the magistrate judge's discovery order, Pack's argument is subject to this court's "firm waiver rule." *Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir. 2004) (internal quotation marks omitted). This rule may be suspended only when a pro se litigant

5

was not "informed of the time period for objecting and the consequences of failing to object," "when the interests of justice warrant," or "when the aggrieved party makes the onerous showing required to demonstrate plain error." *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006) (internal quotation marks omitted).

As Pack was represented by counsel, the first exception does not apply, and we see no basis for invoking the second, particularly given Pack neither acknowledged the lack of objections in his opening brief nor submitted a reply brief to address the waiver issue. *See id.* (observing the plaintiff failed to "submit[] a reply brief to respond to defendants' specific invocation of the waiver rule on appeal"). *See generally Key Energy Res. Inc. v. Merrill (In re Key Energy Res. Inc.)*, 230 F.3d 1197, 1200 (10th Cir. 2000) (noting "the interests of justice exception in counseled cases is a narrow one" and focuses "on the facts that purport to excuse the lack or untimeliness of the filing of objections"). Moreover, although Pack states the discovery ruling "was plain error," Aplt. Br. at 10, he has not come close to the "nearly insurmountable" burden of showing plain error in a civil case. *FDIC v. Kan. Bankers Sur. Co.*, 840 F.3d 1167, 1171 (10th Cir. 2016) (internal quotation marks omitted). For plain error, Pack would need to show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122-23 (10th Cir. 2005) (internal quotation marks omitted). Here, the magistrate judge balanced the parties' competing interests with respect to the discovery request, *see* Fed. R. Civ. P. 26(b)(2), and did not completely foreclose

6

ordering the discovery in the future. There is nothing in the record to suggest Pack attempted to make the particularized showing, sought additional time to make such a showing, or demonstrated that making such a showing was, as he now claims, impossible.

As Pack has failed to satisfy any exception to the firm waiver rule, he has waived appellate review of the magistrate judge's discovery order.

## B. Order on Motion to Strike

Next, Pack contends the district court erred in striking portions of his affidavit submitted in opposition to Defendants' motion for summary judgment.

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial," but "the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (internal quotation marks omitted). "We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." *Id.* A district court abuses its discretion in such an analysis when it "clearly err[s] or venture[s] beyond the limits of permissible choice under the circumstances." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted); *see also Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205-06 (10th Cir. 2003) (noting "[t]he standard for abuse of discretion is high" and entails "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment" (internal quotation marks omitted)).

Here, the district court struck portions of Pack's affidavit on the grounds that: (1) Pack failed to demonstrate how he had personal knowledge of Legler's certifications, licenses, or education; (2) Pack's statements related to Medicaid billing were inadmissible hearsay, particularly those that explicitly relied on what Lisa Brockman with Wyoming Medicaid told Pack; (3) the mere fact that Pack worked at Cloud Peak did not provide Pack with personal knowledge of Legler's group, Cloud Peak's billing practices, or Hickey's direct targeted case management; (4) Pack lacked personal knowledge regarding what Hickey knew concerning billing, other than that he attended a training session alongside Hickey; and (5) Pack's beliefs and opinions were conclusory and not admissible, such as his belief about Legler's notes, Legler's emails to McGowan, what McGowan did with those notes and emails, and when McGowan was actually at the office.

On appeal, Pack fails to address the district court's specific findings and fails to identify by number any of the paragraphs from his affidavit that are at issue. Instead, Pack relies on generalized propositions, lengthy string cites, and conclusory statements.

For example, Pack insists he was not offering hearsay statements to prove the truth of the matter asserted. Pack correctly notes hearsay may be admissible for other purposes, such as to show the declarant's state of mind or the effect on the hearer, but he fails to identify the specific statements in his affidavit that he claims were not hearsay, let alone the purpose of their admission if not the truth of the matter asserted.

8

Pack also disputes the district court's determination that he lacked personal knowledge for some of the statements in his affidavit. Specifically, Pack contends his position as CEO was sufficient, in and of itself, to support an inference of personal knowledge of Cloud Peak's acts, citing the Ninth Circuit's decision in *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990), and this Court's unpublished decision in *Pipkin v. Mortg. Creditcorp, Inc.*, No. 94-6443, 1995 WL 747437 (10th Cir. Dec. 18, 1995), which cited *Barthelemy*. However, those decisions found an inference of personal knowledge based not only on the corporate officers' respective positions, but *also* on "the nature of their participation in the contested matters." *Pipkin*, 1995 WL 74737, at *4 n.5 (citing *Barthelemy*, 897 F.2d at 1018).

Here, assuming Pack was a corporate officer for such an analysis,[3] his affidavit was devoid of any indication that he personally participated in Cloud Peak's billing, personnel decisions, or coordination of care such that the statements at issue in his affidavit would be supported by personal knowledge, by inference or otherwise. Indeed, belying his claim of personal knowledge, Pack was clear that Hickey was the *sole* person responsible for reviewing and submitting all Medicaid bills and that Pack was not part of the team involved in hiring staff for Cloud Peak.

---

[3] Pack claimed in his first affidavit that he was CEO and Vice President from 2002 until 2013, even though Cloud Peak was not incorporated until 2005, and he stated in his second affidavit that he was "the director" from 2005 until 2013, with no mention of being CEO or Vice President. *Compare* Aplt. App. Vol. 1 at 33, *with id.* Vol. 2 at 204. In his deposition, he stated he was CEO but denied being Vice President or Executive Director, although he may have been listed as such on some paperwork. *Id.* Vol. 1 at 83.

Ultimately, the district court carefully considered Defendants' motion to strike and in large measure *denied* the motion, striking only the inadmissible portions of Pack's affidavit and admitting, over Defendants' objection, an affidavit from Pack's expert witness, Jeff Leston, as well as numerous exhibits submitted by Pack, including over 3,000 pages of remittance advices, nearly 2,000 pages of clinical records, a business record declaration, and a letter from the Wyoming Attorney General's Office rejecting Cloud Peak's proposed payment plan for the civil penalty. Accordingly, Pack has failed to demonstrate the district court abused its discretion in striking portions of his affidavit.

## C. Order Granting Summary Judgment

Pack next contends the district court erred in awarding summary judgment to Defendants. We disagree.

Summary judgment is warranted "if the movant shows . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo*, 452 F.3d at 1199. This court "review[s] a district court's decision granting summary judgment *de novo*, resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party." *Id.*

The FCA allows the recovery of civil penalties and treble damages from anyone who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to

10

be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). For the "knowingly" scienter element, the relator must show that the defendant who made the alleged false claim did so with "actual knowledge of the information," "in deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1). "Under the FCA, the relator (or the government) must prove scienter as an element; it cannot be presumed." *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 955 (10th Cir. 2008).

On appeal, Pack argues the district court erred in granting summary judgment but addresses only his claim regarding Legler's skills group being billed as a therapy group. Because Pack has not addressed in his brief his other two claims of Medicaid fraud, we decline to review the granting of summary judgment as to those claims. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007). As to the claim concerning Legler's group, Pack argues that Hickey knew or should have known that Legler was not qualified to lead a therapy group, that McGowan was not present at the group sessions, and that Legler's sessions should have been billed as skills groups and not therapy groups.

The district court properly found Pack failed to adduce evidence satisfying either the falsity or scienter elements of an FCA claim. It is undisputed that Legler was not a licensed therapist and that the sessions were billed under McGowan's provider number, but Pack failed to demonstrate that the sessions were falsely billed. Pack cited, as a supplemental authority, a Medicaid policy that indicated Legler

11

would have been permitted only to work as an aide to a qualified professional who was directly providing the services. However, while Pack argued to the district court that "McGowan did not attend the groups," Aplt. App. Vol. 2 at 187, the portion of his affidavit cited in support of this assertion was properly stricken for lack of personal knowledge. As the district court correctly noted, nothing prevented Pack from deposing or obtaining an affidavit from McGowan or Legler. Without concrete evidence, Pack's supposition and conjecture was insufficient to demonstrate a false claim, particularly since he failed to identify, either in response to interrogatories or at his deposition, a single false bill.

Additionally, even if Pack had satisfied the falsity element and shown that Legler's groups were improperly billed, the absence of evidence supporting the scienter element is striking. *See United States ex rel. Smith v. The Boeing Company,* 825 F.3d 1138, 1149 (10th Cir. 2016) ("As in *Burlbaw*, we are 'struck' here 'by what is not in the record.'" (quoting *Burlbaw*, 548 F.3d at 949)). Pack did not depose any past or present employee of Cloud Peak, did not depose any state regulatory official with whom he communicated about his allegations, and, most glaringly, did not depose Hickey—the very person whose actual knowledge of the false claim is vital to satisfy the scienter element. *See Burlbaw*, 548 F.3d at 949 ("[R]elators identify no deposition testimony from any defendant relevant to the issue of scienter."). Additionally, it is noteworthy that the Medicaid Fraud Unit of the Wyoming Attorney

General's Office observed possible ambiguity in the applicable rules and policies,[4] further suggesting that any false billing was not done knowingly. *See id.* at 958 (citing cases where legal uncertainty or ambiguity precluded a finding of scienter under the FCA). Therefore, there is no evidence that tends to suggest Hickey had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information, or acted in reckless disregard to the truth or falsity of the information. *See* 31 U.S.C. § 3729(b)(1). Without evidence for the scienter element, the district court did not err in granting summary judgment to Defendants.

### D. Order Denying Motion to Reconsider

Next, Pack contends the district court erred in denying his motion to reconsider pursuant to Fed. R. Civ. P. 59(e). We disagree.

"Grounds warranting a [Rule 59(e)] motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Rule 59(e) relief is appropriate only where 'the court has misapprehended the facts, a party's position, or the controlling law.'" *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

---

[4] Pack contends this report, submitted by Defendants with their brief in support of summary judgment, was hearsay and should not have been considered. However, Pack never objected to or moved to strike the report, although he could have done so; indeed, he referenced the report in his brief opposing summary judgment, Aplt. App. Vol. 2 at 198. As such, Pack has waived any challenge to the report.

This court, in turn, "review[s] the district court's denial of a motion to reconsider for abuse of discretion." *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013).

Pack fails to address the specific findings by the district court in denying his motion to reconsider. Instead, Pack re-asserts that the court erred in striking portions of his affidavit, but for the same reasons stated above regarding the motion to strike, the court did not err in denying reconsideration on that basis. Additionally, "[i]t is not appropriate to revisit issues already addressed" with a motion to reconsider. *Servants of the Paraclete*, 204 F.3d at 1012.

Pack also contends the district court erred in failing to consider supplemental authority he submitted right before the court ruled on summary judgment. The supplemental authority consisted of an undated copy of Wyoming Medicaid's "Mental Health Personnel Standards and Policies," without any accompanying explanation of its application to the facts of the case. This Medicaid policy plainly was neither "an intervening change in the controlling law" nor "new evidence previously unavailable," and Pack also has failed to demonstrate "manifest injustice." *Id.* There was no reason why this Medicaid policy could not have been cited and explained a full month earlier when Pack filed his brief opposing summary judgment, particularly given Pack discussed other sections of the same manual. The district court can hardly be faulted for not discussing such an eleventh-hour submission. Much as a motion to reconsider is not intended as an opportunity to rehash

arguments, it also is not intended as a forum to "advance arguments that could have been raised in prior briefing." *Id.*

Regardless, even if the district court had considered the supplemental authority, at most it would have shown that Legler was not qualified under Medicaid policies to lead a therapy group and that McGowan was required to do more than supervise. However, this would not alter the scienter calculus, since there still was no evidence Defendants acted with "actual knowledge of the information," "in deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

Pack has failed to show an intervening change in law, newly discovered evidence, or a manifest injustice, and he has failed to demonstrate that the district court abused its discretion in denying his motion to reconsider.

**E. Order Awarding Attorneys' Fees**

Finally, Pack argues the district court erred in granting Defendants' motion for attorneys' fees, which amounted to $92,592.75. We find no reversible error.

The False Claims Act provides for the award of attorneys' fees where the claim was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). "[T]hat a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees"; rather, fees should be awarded only when the district court finds the action "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000) (internal

15

quotation marks omitted). In order to recover attorneys' fees in a *qui tam* action, a successful defendant "must demonstrate that the plaintiff has misused his statutory privilege and distorted the intent of the legislation." *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 n.22 (10th Cir. 2004) (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 419-20 (1978)). This court, in turn, reviews a district court's award of attorneys' fees for an abuse of discretion. *See In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1017 (10th Cir.), *cert. denied sub nom. United States ex rel. Grynberg v. Agave Energy Co.*, 138 S. Ct. 84 (2017).

Here, the district court based its award of attorneys' fees on several findings, including that: (1) Pack failed to adduce evidence of false billing; (2) Pack failed to adduce evidence satisfying the scienter element of an FCA claim; (3) Pack could not identify a single document during his deposition to support his claim related to Foley but, instead, relied entirely on what he was told by Wyoming Medicaid officials; (4) Pack never deposed or obtained an affidavit from any state regulatory officials, any Cloud Peak employees, or, most importantly, Hickey and, instead, relied on hearsay and speculation; (5) Pack failed to provide any evidence from Medicaid regarding the allegation involving Foley, despite testifying that he was alerted to this by Medicaid; (6) Pack's claims throughout the litigation were evolving and changing; and (7) Pack, through counsel, proposed a settlement offer, the contents of which tended to show he brought the action for an improper purpose.

On appeal, Pack largely ignores the district court's findings. Pack does not contest either the court's consideration of his settlement offer or the court's

16

observation that his claims were evolving. Although Pack generally takes issue with the district court's characterization of the strength of his case, he offers no response to the district court's observation that he failed to depose or obtain a sworn statement from any of the key individuals, most notably Hickey. Moreover, in both his deposition and discovery responses, Pack admitted he was unable to identify a single concrete example of a fraudulent bill. *See In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d at 1018, 1023 (noting the plaintiff's "deposition testimony and interrogatory answers confirmed that he had lacked an evidentiary basis" and that such "admissions gave the district court another firm basis to hold the claims were clearly frivolous"); *see also Prochaska v. Marcoux*, 632 F.2d 848, 854 (10th Cir. 1980) (holding a plaintiff's deposition testimony admitting a lack of evidence supported a fees award).

Because we do not have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice," *Praxair*, 389 F.3d at 1058 (internal quotation marks omitted), we decline to set aside the award of attorneys' fees.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court in all regards.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

17